# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re:   Jessica Lee Allen | : | |
| | : | Case No.: 11-62470 |
| | : | |
| | : | Chapter 13 |
| | : | |
| Debtor. | : | Judge Preston |

## MOTION OF DEBTOR TO AVOID JUDICIAL LIENS

Now comes the Debtor, Jessica Lee Allen (the "Debtor"), by and through the undersigned counsel, and hereby moves this Court, pursuant to 11 U.S.C. 522(f)(1), to avoid the judicial liens of the Ohio Department of Taxation to the extent said liens impair exemptions of the Debtor.  A Memorandum in Support is attached.

Respectfully submitted,

/s/ Sondra O. Bryson    _
Sondra O. Bryson (0083871)
Bryson Legal, LLC
844 S. Front St.
Columbus, OH 43206
Telephone: (614) 221-5379
Facsimile: (614) 443-7463
sbryson@brysonlegalohio.com
Attorney for the Debtor

## MEMORANDUM IN SUPPORT

### A.    BACKGROUND INFORMATION

1.    The Debtor commenced this proceeding by filing a voluntary petition under Chapter 13 of the Bankruptcy Code on December 16, 2011 (the "Petition Date").

2.    As indicated on Schedule A of the Debtor's Schedules of Assets and Liabilities (the "Schedules"), the Debtor owns a fee simple interest in the real property located at 6504 Crab

Apple Drive, Canal Winchester, Ohio 43110 (the "Real Estate"). A true and accurate copy of the Deed for the Real Estate is attached hereto as Exhibit A.

3. The Real Estate is valued at $53,800 pursuant to an appraisal conducted on January 9, 2012 by James Smoot of JS and Associates. A true and accurate copy of the appraisal by JS and Associates was filed in this proceeding on January 10, 2012 as Doc. 15 and is attached hereto as Exhibit B, showing a total estimated value of $53,800.

4. On the Petition Date, the Real Estate was subject to the following liens:

    a. A mortgage dated April 25, 2007, in favor of Builder's Financial Association (the "Mortgage"). The Mortgage was filed of record in the Office of the Recorder, Franklin County, Ohio in Instrument No. 200704270073057, on April 27, 2007. A true and accurate copy of the Mortgage is attached hereto as Exhibit C. The Mortgage was assigned to Huntington National Bank before the Petition Date in Instrument No. 201007120087370, a true and accurate copy of which is attached hereto as Exhibit D. The amount due on the Petition Date was $87,712.88 as stated in Claim 6, filed in this action on January 26, 2012.

    b. A Certificate of Judgment in favor of the Ohio Department of Taxation, in the original amount of $230.55 (the "First Certificate of Judgment"). The First Certificate of Judgment is filed in the Franklin County, Ohio, Court of Common Pleas in the judgment case of <u>Ohio Department of Taxation v. Jessica Lee Allen</u>, Case No. 11 JG 01 02725, filed on January 19, 2011. A true and accurate copy of the First Certificate of Judgment is attached hereto as Exhibit E.

     c.   A Certificate of Judgment in favor of the Ohio Department of Taxation, in the original amount of $284.04 (the "Second Certificate of Judgment"). The Second Certificate of Judgment is filed in the Franklin County, Ohio, Court of Common Pleas in the judgment case of <u>Ohio Department of Taxation v. Jessica Lee Allen</u>, Case No. 11 JG 08 33055, filed on August 18, 2011. A true and accurate copy of the Certificate of Judgment is attached hereto as Exhibit F

5.     Pursuant to Ohio Revised Code 2329.66(A)(1), the Debtor claims a $21,625.00 homestead exemption in the Real Estate.  <u>See</u> Schedules, Schedule C.

6.     No objections to the Debtor's claim of exemption have been filed in this case or received by counsel for the Debtors.

## B.    LAW AND ARGUMENT

A debtor may avoid a judicial lien to the extent it impairs an exemption, pursuant to 11 U.S.C. 522(f)(1), which provides:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (A) a judicial lien....

11 U.S.C. 522(f)(1)(A); <u>In re Smith</u>, 267 B.R. 568, 570 (Bankr. S.D. Ohio 2001).  A judicial lien is defined in 11 U.S.C. 101(36) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."   The First Certificate of Judgment and Second Certificate of Judgment were obtained through legal proceedings initiated by the Ohio Department of Taxation that resulted in judgments encumbering the Real Estate.  Thus, the First Certificate of Judgment and Second Certificate of Judgment are judicial liens pursuant to 11 U.S.C. 101(36).

In order to determine whether a judicial lien impairs a debtor's exemption, a calculation must be made according to the formula provided in 11 U.S.C. 522(f)(2)(A):

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
> > (i) the lien;
> > (ii) all other liens on the property; and
> > (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

"However, 522(f) provides that a judicial lien may be avoided only 'to the extent that' it impairs an exemption." Tedeschi v. Falvo (In re Falvo), 227 B.R. 662, 666 (6th Cir. BAP (Ohio) 1998). Where the impairment amount exceeds the amount of the lien to be avoided, the lien is avoidable in full. See, In re Smith, 267 B.R. at 577.

Employing the formula contained in 11 U.S.C. 522(f)(2)(A), the exemption impairment of the Real Estate is calculated as follows:

| | | |
|---|---|---|
| Mortgage | $ | 87,712.88 |
| First Certificate of Judgment | $ | 230,55 |
| Second Certificate of Judgment | $ | 284.04 |
| Debtors' Exemption | $ | 21,625.00 |
| Total of all liens | $ | 109,852.47 |
| | | |
| Minus value of Debtors' interest in Real Estate in absence of liens: - | $ | 53,800 |
| Exemption Impairment | $ | 56,052.47 |

Because the Exemption Impairment exceeds the value of both the First Certificate of Judgment and the Second Certificate of Judgment in full ($56,052.47 Exemption Impairment > $514.59 (230.55 + 284.04)), the First Certificate of Judgment and the Second Certificate of Judgment fully impair the Debtors' homestead exemption. Therefore, the First Certificate of Judgment and Second Certificate of Judgment may be avoided by the Debtor in their entirety pursuant 11 U.S.C. 522(f)(1)(A).

C.      **CONCLUSION**

Based upon the foregoing, the Debtor respectfully requests that the Court issue an Order

1.      avoiding the judgment liens of the Ohio Department of Taxation in their entirety,

pursuant to 11 U.S.C. 522(f)(1);

2.      directing the Franklin County Recorder to record any Order issued by this Court

releasing the judgment liens of the Ohio Department of Taxation;

3.      directing the Franklin County Clerk of Courts to file any Order issued by this

Court releasing the judgment liens of the Ohio Department of Taxation; and

4.      granting such other and further relief as is appropriate.

Respectfully submitted,


/s/ Sondra O. Bryson_____
Sondra O. Bryson  (0083871)
Bryson Legal, LLC
844 South Front Street
Columbus, OH 43206
Telephone: (614)221-5379
Fax: (614) 443-7463
sbryson@brysonlegalohio.com
*Attorney for the Debtor*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re:   Jessica Lee Allen | : | |
| | : | Case No.: 11-62470 |
| | : | |
| | : | Chapter 13 |
| | : | |
| Debtor. | : | Judge Preston |

## NOTICE OF MOTION OF DEBTOR TO AVOID
## JUDICIAL LIENS

The Debtor has filed papers with the court seeking to avoid judicial liens pursuant to 11 U.S.C. 522(f)(1).

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to grant the relief sought in the motion, then on or before **twenty-one (21) days from the date set forth in the certificate of service for the motion**, you must file with the court a response explaining your position by mailing your response by regular U.S. Mail to 170 North High Street, Columbus, Ohio 43215, OR your attorney must file a response using the court's ECF System.

The court must **receive** your response on or before the above date. You must also send a copy of your response either by 1) the court's ECF System or by 2) regular U.S. Mail to Sondra O. Bryson, 844 S. Front St., Columbus, Ohio 43206 and to the parties listed on the certificate of service.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion/objection and may enter an order granting that relief without further hearing or notice.

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that on September 24, 2012, a copy of the foregoing MOTION OF DEBTOR TO AVOID JUDICIAL LIENS was served on the following registered ECF participants, **electronically** through the court's ECF system at the email address registered with the court:

United States Trustee
Frank M. Pees, Chapter 13 Trustee
Sondra O. Bryson
Edward A. Bailey
Rasheda D. Hansard

and on the following by **ordinary U.S. Mail** addressed to:

Frank M. Pees, Chapter 13 Trustee
130 E. Wilson Bridge Rd., Suite 200
Worthington, Ohio 43085

Office of the US Trustee
170 North High Street, Suite 200
Columbus, OH 43215
Rasheda D. Hansard
399 E. Main St., Suite 200
Columbus, OH 43215

Edward A. Bailey
2450 Edison Blvd.
Twinsburg, OH 44087

Ohio Department of Taxation
Attn: Bankruptcy Division
PO Box 530
Columbus, OH 43216-0530

Ohio Attorney General
Collections Enforcement Section
Attn: Bankruptcy Unit
150 East Gay Street, 21st Floor
Columbus, OH 43215

Jessica Lee Allen
6504 Crab Apple Drive
Canal Winchester, OH 43110


 /s/  Sondra O. Bryson
Sondra O. Bryson (0083871)

## CORPORATION LIMITED WARRANTY DEED
(Statutory Form Revised Code Sec. 5302.08)



2007042700073057
Pg: 2  $28.00  T200780276605
04/27/2007 9:29AM  0XCONNOR LAND
Robert G. Montgomery
Franklin County Recorder



### *Know all Men by these Presents:*

*White Oak Park, Ltd., an Ohio limited liability company, of Franklin County, State of Ohio, for valuable consideration paid, grants, with limited warranty covenants, to*  **JESSICA L. ALLEN**

*whose tax mailing address is*  **1721 MOON LAKE BLVD., SUITE 400, HOFFMAN ESTATES, IL  60194**

*the following described real property:*
See Exhibit "A" attached hereto and made a part hereof.

CONNOR LAND TITLE BOX 2007104|1854

*Parcel No.* 010- 278443

*Property Address:* **6504 CRAB APPLE DRIVE**

*Prior reference:* Instrument Number 200304010094075; 200304010094077; 200304010094082; 200509020181508

*Subject to zoning ordinances, easements and restrictions of record and taxes and assessments due and payable after delivery of this deed.*

*Said White Oak Park Ltd., an Ohio limited liability company, has caused its corporate name to be subscribed to these presents by L. Brent Miller, its President, this* ____10 *day of* ____Jan._____, 2007

White Oak Park, Ltd., an Ohio limited liability company

By _____
*L. Brent Miller, its President*

*State of Ohio, Franklin County, SS:*

*The foregoing instrument was acknowledged before me this* ____10 *day of* ____Jan._____, 2007 *by White Oak Park, Ltd., an Ohio limited liability company, by L. Brent Miller, its President, on behalf of the company.*

_____
*Notary Public*

Angela L. Moore
Notary Public-State of Ohio
My Commission Expires
June 16, 2010

THIS SPACE FOR RECORDER'S USE ONLY

This Instrument Prepared By:
David A. Connor, Attorney at Law

$631

**Conveyance**

Mandatory- 83.00

Permissive- 83.00

JOSEPH W. TESTA
FRANKLIN COUNTY AUDITOR

**TRANSFERRED**

APR 27 2007

JOSEPH W. TESTA
AUDITOR
FRANKLIN COUNTY, OHIO

EXHIBIT "A"

SITUATED IN THE STATE OF OHIO, COUNTY OF FRANKLIN, CITY OF COLUMBUS:

BEING UNIT 10-6504  BUILDING 10, OF WHITE OAK PARK CONDOMINIUM, TOGETHER WITH ITS UNDIVIDED INTEREST IN COMMON AREAS AND FACILITIES, AS THE SAME IS DESIGNATED, DELINEATED AND DESCRIBED IN THE DECLARATION AND ON THE DRAWINGS THEREOF, OF RECORD, RESPECTIVELY, AS INSTRUMENT NUMBER 200310290346048; AS AMENDED BY THE FIRST AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200404290097517; AS AMENDED BY THE SECOND AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200406070129897; AS AMENDED IN THE THIRD AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200407190166643; AS AMENDED IN THE FOURTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200410120236721; AS AMENDED BY THE FIFTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200504080065584; AS AMENDED BY THE SIXTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200510250224347; AS AMENDED BY THE SEVENTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200608140159761; AS AMENDED BY THE EIGHTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200703290054305; AS REFERENCED IN CONDOMINIUM PLAT BOOK 122, PAGES 79 THROUGH 101; AS AMENDED IN CONDOMINIUM PLAT BOOK 131, PAGES 2 THROUGH 20; AS AMENDED IN CONDOMINIUM PLAT BOOK 135, PAGES 36 THROUGH 54; AS AMENDED IN CONDOMINIUM PLAT BOOK 139, PAGES 1 THROUGH 8; AS AMENDED IN CONDOMINIUM PLAT BOOK 146, PAGES 70 THROUGH 87; AS AMENDED IN CONDOMINIUM PLAT BOOK 155, PAGES 96 THROUGH 109; AS AMENDED IN CONDOMINIUM PLAT BOOK 173, PAGES 43 THROUGH 53; AS AMENDED IN CONDOMINIUM PLAT BOOK 184, PAGES 98 THROUGH 105, RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO.

PARCEL NUMBER 010-278443

2007041854

# RESTRICTED LIMITED APPRAISAL REPORT


EXHIBIT
**B**

## Date of Valuation

JANUARY 9, 2012

OWNER: JESSICA L ALLEN
6504 CRAB APPLE DR
CANAL WINCHESTER, OH 43110

For

ATTORNEY SONDRA BRYSON
FOR UNITED STATES BANKRUPTCY COURT

## TABLE OF CONTENTS

Real Estate Value Estimate ................................................................................................................................................................ 1
Subject Photos ...................................................................................................................................................................................... 2
Comparable Photos 1-3 ...................................................................................................................................................................... 3
Location Map .......................................................................................................................................................................................... 4
Statement of Limiting Conditions ...................................................................................................................................................... 5
Limited Appraisal Departure Disclosure  ........................................................................................................................................ 7

# REAL ESTATE VALUE ESTIMATE

## SUBJECT

Contact **JESSICA L ALLEN**   Census Tract 0094.92   Map Reference T177D 09600

Property Address 6504 Crab Apple Dr   Check one: ☐ SF ☐ PUD ☒ CONDO ☐ 2-4 Units

City **Canal Winchester**   County FRANKLIN   State OH   Zip Code 43110

Phone No. Res. N/A   Loan Amount $ N/A   Term N/A   Mos. Owner's Est. of Value $ N/A

| No. of Rooms | No. of Bedrooms | No. of Baths | Family room or den | Gross Living Area | Garage/Carport (specify type & no.) | Porches, Patio or Pool (specify) | Central Air |
|---|---|---|---|---|---|---|---|
| 3 | 1 | 1.5 | ☐ Yes ☒ No | 784 Sq. Ft. | N/A | STOOP | ☒ Yes ☐ No |

## FIELD REPORT

### NEIGHBORHOOD

| | | | | | | Good | Avg | Fair | Poor |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | | | | | |
| Built Up | ☒ Over 75% | ☐ 25% to 75% | ☐ Under 25% | Property Compatibility | | ☐ | ☒ | ☐ | ☐ |
| Growth Rate | ☐ Fully Dev. | ☐ Rapid | ☒ Steady | ☐ Slow | General Appearance of Properties | ☐ | ☒ | ☐ | ☐ |
| Property Values | ☐ Increasing | ☒ Stable | ☐ Declining | Appeal to Market | | ☐ | ☒ | ☐ | ☐ |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Oversupply | | | | | | |
| Marketing Time | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | | | | | | |

Present Land Use  70% 1 Family  % 2-4 Family 10 % Apts. 10 % Condo 10% Commercial % Industrial % Vacant %

Change in Present Land Use ☒ Not Likely  ☐ Likely  ☐ Taking Place From  To

Predominant Occupancy ☒ Owner  ☐ Tenant  0 % Vacant

S/F Price Range $ 45,000 to $ 67,500   $ 60,000 = Predominant Value

S/Family Age 6 yrs. to 7 yrs. Predominant Age 7 yrs.

Comments including those factors affecting marketability (e.g. public parks, schools, view, noise) WRIGHT RD TO THE NORTH, LEHMAN RD TO THE SOUTH, BOWEN RD TO THE EAST, GENDER RD TO THE WEST. LOCATED IN WHITE OAK PARK CONDO AMONG PROPERTIES WITH SIMILAR STYLES, VALUES AND APPEALS. AVERAGE ACCESS TO MAJOR ROADWAYS. ROUTE 33 10 MINUTES. COLUMBUS CITY SCHOOLS. LOCAL SHOPPING, CHURCHES, PARKS & RECREATION.

### SUBJECT PROPERTY

Approx. Yr. Blt.20 05  # Units 1  # Stories 2

| | | Good | Avg | Fair | Poor |
|---|---|---|---|---|---|
| Type (det, duplex, semi/det. etc.)  ATTACHED | PROPERTY RATING | | | | |
| Design (rambler, split, etc.)  CONDOMINIUM | Condition of Exterior | ☐ | ☒ | ☐ | ☐ |
| Exterior Wall Mat.  STONE/VINYL   Roof Mat. COMPOSITE ASPHL | Compatibility to Neighborhood | ☐ | ☒ | ☐ | ☐ |
| Is the property in a HUD-Identified Special Flood Haz. Area? ☒ No ☐ Yes | Appeal and Marketability | ☐ | ☒ | ☐ | ☐ |

Special Energy-Effic. Items  UNABLE TO VERIFY - APPRAISER UNABLE TO GAIN ENTRY. APPRAISER RESERVES THE RIGHT TO AMEND APPRAISAL IF INTERIOR INSPECTION IS WARRANTED.

Comments (favorable or unfavorable incl. deferred maintenance)  AVERAGE EXTERIOR CONDITION. ROOF & GUTTERS APPEAR TO BE FUNCTIONAL. PURPOSE OF THIS APPRAISAL IS TO ESTIMATE MARKET VALUE. HIGHEST AND BEST USE SINGLE FAMILY RESIDENTIAL. EXTERIOR INSPECTION ONLY. INTERIOR BELIEVED TO BE CONSISTENT WITH EXTERIOR.

## MARKET COMPARABLE ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | 6504 Crab Apple Dr | 6544 Crab Apple Dr | | 6550 Crab Apple Dr | | 6556 Crab Apple Dr | |
| Address | Canal Winchester, OH 43110 | Canal Winchester, OH 43110 | | Canal Winchester, OH 43110 | | Canal Winchester, OH 43110 | |
| Proximity to Sub. | N/A | 0.02 miles E | | 0.02 miles E | | 0.02 miles E | |
| Sales Price | $ N/A | $ 60,000 | | $ 67,500 | | $ 45,000 | |
| Date of Sale and | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Time Adjustment | N/A | 12/02/2011 | | 07/13/2011 | | 12/22/2011 | |
| Location | WHITE OAK PARK | WHITE OAK PARK | | WHITE OAK PARK | | WHITE OAK PARK | |
| Site/View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Age | 7 | 6 | | 6 | | 6 | |
| Condition | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Living Area Rm. | Total / B-rms. / Baths | Total / B-rms. / Baths | | Total / B-rms. / Baths | -2,000 | Total / B-rms. / Baths | -2,000 |
| Count and Total | 3 / 1 / 1.5 | 4 / 2 / 1.5 | -2,000 | 4 / 2 / 2.5 | -2,000 | 4 / 2 / 2.5 | -2,000 |
| Gross Living Area | 784 Sq. Ft. | 1,088 Sq. Ft. | -1,520 | 1,088 Sq. Ft. | -1,520 | 1,088 Sq. Ft. | -1,520 |
| Air Conditioning | YES | YES | | YES | | YES | |
| Garage/Carport | N/A | 2 CAR DETACH | | 2 CAR DETACH | | 2 CAR DETACH | |
| Porches, Patio, Pools, etc. | STOOP | STOOP PATIO | | STOOP PATIO | | STOOP PATIO | |
| Special Energy-Efficient Items | INSL WINDOWS | INSL WINDOWS | | INSL WINDOWS | | INSL WINDOWS | |
| Other | BASEMENT | BASEMENT | | BASEMENT | | BASEMENT | |
| Net Adjust (Total) | | ☐ + ☒ − $ | -3,520 | ☐ + ☒ − $ | -5,520 | ☐ + ☒ − $ | -5,520 |
| Indicated Value Sub. | | $ | 56,480 | $ | 61,980 | $ | 39,480 |

General Comments  FOR BANKRUPTCY COURT USE ONLY. DATA SOURCES REALQUEST AND PUBLIC RECORDS. SALES COMPARISON APPROACH USED IN THE FINAL ANALYSIS.

Estimated Value $ 53,800  as of  JANUARY 9, 2012

Completed By JAMES SMOOT   Title APPRAISER

Signature _(signature)_   Date  January 10, 2012

[Y2K]

## Subject Photo Page

| Borrower/Client | JESSICA L ALLEN | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6504 Crab Apple Dr | | | | | |
| City | Canal Winchester | County | FRANKLIN | State | OH | Zip Code  43110 |
| Lender | ATTORNEY SONDRA BRYSON | | | | | |



### Subject Front

| | |
|---|---|
| 6504 Crab Apple Dr | |
| Sales Price | N/A |
| Gross Living Area | 784 |
| Total Rooms | 3 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.5 |
| Location | WHITE OAK PARK |
| View | RESIDENTIAL |
| Site | |
| Quality | |
| Age | 7 |



### Subject Rear



### Subject Street

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | JESSICA L ALLEN |
| Property Address | 6504 Crab Apple Dr |
| City | Canal Winchester | County FRANKLIN | State OH | Zip Code 43110 |
| Lender | ATTORNEY SONDRA BRYSON |



### Comparable 1

6544 Crab Apple Dr
| | |
|---|---|
| Prox. to Subject | 0.02 miles E |
| Sale Price | 60,000 |
| Gross Living Area | 1,088 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.5 |
| Location | WHITE OAK PARK |
| View | RESIDENTIAL |
| Site | |
| Quality | |
| Age | 6 |



### Comparable 2

6550 Crab Apple Dr
| | |
|---|---|
| Prox. to Subject | 0.02 miles E |
| Sale Price | 67,500 |
| Gross Living Area | 1,088 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.5 |
| Location | WHITE OAK PARK |
| View | RESIDENTIAL |
| Site | |
| Quality | |
| Age | 6 |



### Comparable 3

6556 Crab Apple Dr
| | |
|---|---|
| Prox. to Subject | 0.02 miles E |
| Sale Price | 45,000 |
| Gross Living Area | 1,088 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.5 |
| Location | WHITE OAK PARK |
| View | RESIDENTIAL |
| Site | |
| Quality | |
| Age | 6 |

## Location Map

| Borrower/Client | JESSICA L ALLEN | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6504 Crab Apple Dr | | | | | | |
| City | Canal Winchester | | County | FRANKLIN | State | OH | Zip Code 43110 |
| Lender | ATTORNEY SONDRA BRYSON | | | | | | |



**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> *Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

# STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**  The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership.

2.   The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.   The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.   The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.  Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent  conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.   The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.   The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10.   The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

---

www.jsandassociatesappraisal.com
Form ACR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1.  I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation.  If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.  I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.  I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.  I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.  I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.  I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report.  I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them.  I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report.  If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report.  I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that:
I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  6504 Crab Apple Dr, Canal Winchester, OH 43110

**APPRAISER:**                                                        **SUPERVISORY APPRAISER (only if required):**

Signature: _____                    Signature: _____
Name:  JAMES SMOOT                                          Name: _____
Date Signed:   January 10, 2012                             Date Signed: _____
State Certification #:_____                       State Certification #:_____
or State License #:  2002018172                             or State License #:_____
State:  OHIO                                                        State:_____
Expiration Date of Certification or License: 10/16/2012   Expiration Date of Certification or License:_____

☐ Did      ☐ Did Not Inspect Property

Form ACR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# LIMITED APPRAISAL DEPARTURE DISCLOSURE

This report is a Limited Appraisal made according to the binding and specific requirements of the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Standards Board of the Appraisal Foundation. The Departure Rule permits departures from some sections of the USPAP that are classified as guidelines. USPAP places the burden of proof on the appraiser to decide before accepting an assignment which calls for something less than, or different from, the work that would otherwise be required by USPAP guidelines, and to determine that the appraisal process is not so limited that the results of the assignment are no longer credible. The appraiser must advise the client that a limited appraisal assignment may not be as reliable as a complete appraisal, and that the report must clearly identify and explain the departures. The client must agree that the performance of a limited appraisal service would be appropriate, given the intended use.

☒ I am satisfied that the appraisal I performed is not so limited that the results of the assignment will tend to mislead or confuse the client or any other disclosed intended users of the report. I have indicated below those specific sections of the USPAP from which I have departed. I have prominently disclosed in the appraisal report that this is a limited appraisal and that I have not performed all of the items of the appraisal process for a complete appraisal, and that a limited appraisal may be less reliable than a complete appraisal.

☐ **Standards Rule 1-3 (a)** "identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic supply and demand, the physical adaptability of the real estate, and market area trends;"

Departure: _____

Explanation: _____

☐ **Standards Rule 1-3 (b)** "develop an opinion of the highest and best use of the real estate."

Departure: _____

Explanation: _____

☐ **Standards Rule 1-4 (a)** "When a sales comparison approach is applicable, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion."

Departure: _____

Explanation: _____

☒ **Standards Rule 1-4 (b)** "When a cost approach is applicable, an appraiser must: (i) develop an opinion of site value by an appropriate appraisal method or technique; (ii) analyze such comparable cost data as are available to estimate the cost new of the improvements (if any); and (iii) analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (accrued depreciation)."

Departure: COST APPROACH NOT USED OR CONSIDERED

Explanation: CHAPTER 13 BANKRUPTCY

☒ **Standards Rule 1-4 (c)** "When an income approach is applicable, an appraiser must: (i) analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property; (ii) analyze such comparable operating expense data as are available to estimate the operating expenses of the property; (iii) analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount; and (iv) base projections of future rent and/or income potential and expenses on reasonably clear and appropriate evidence."

Departure: INCOME APPROACH NOT USED OR CONSIDERED

Explanation: CHAPTER 13 BANKRUPTCY

☐ **Standards Rule 1-4 (d)** "When developing an opinion of the value of a leased fee estate or a leasehold estate, an appraiser must analyze the effect on value, if any, of the terms and conditions of the lease(s)."

Departure: _____

Explanation: _____

☐ **Standards Rule 1-4 (e)** "An appraiser must analyze the effect on value, if any, of the assemblage of the various estates or component parts of a property and refrain from valuing the whole solely by adding together the individual values of the various estates or component parts."

Departure: _____

Explanation: _____

☐ **Standards Rule 1-4 (f)** "An appraiser must analyze the effect on value, if any, of anticipated public or private improvements, located on or off the site, to the extent that market actions reflect such anticipated improvements as of the effective appraisal date."

Departure: _____

Explanation: _____

☐ **Standards Rule 1-4 (g)** "An appraiser must analyze the effect on value of any personal property, trade fixtures, or intangible items that are not real property but are included in the appraisal."

Departure: _____

Explanation: _____

☐ **Standards Rule 1-4 (h)** "When appraising proposed improvements, an appraiser must examine and have available for future examination: (i) plans, specifications, or other documentation sufficient to identify the scope and character of the proposed improvements; (ii) evidence indicating the probable time of completion of the proposed improvements; and (iii) reasonably clear and appropriate evidence supporting development costs, anticipated earnings, occupancy projections, and the anticipated competition at the time of completion."

Departure: _____

Explanation: _____

Additional Explanations:

Return To:



EXHIBIT

**C**

```
2007042700073066
Pgs: 13  $116.00  T20070027686
04/27/2007 9:24AM  BXCONNOR LAND
Robert G. Montgomery
Franklin County Recorder
```

———————————— {Space Above This Line For Recording Data} ————————————

State of Ohio

FHA Case No.

# OPEN-END MORTGAGE

MIN

THIS MORTGAGE ("Security Instrument") is given on **April 25, 2007**
The Mortgagor is
**JESSICA L. ALLEN, UNMARRIED**

whose current mailing address is **1746 S. HAMILTON ROAD**
**COLUMBUS, OH 43227**
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**BUILDER'S FINANCIAL CORPORATION**
("Lender") is organized and existing under the laws of **THE STATE OF OHIO** , and
has an address of **2800 CORPORATE EXCHANGE DRIVE, SUITE 400**
**COLUMBUS, OHIO 43231** . Borrower owes Lender the principal sum of
**Eighty-Two Thousand, Three Hundred Forty-Eight and No/100 ————————**
Dollars (U.S. $ **82,348.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **May 1, 2037**
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

FHA Ohio Open-End Mortgage with MERS- 4/96
Wolters Kluwer Financial Services
VMP®-4N(OH) (0405).03          Amended 2/01
Page 1 of 8          Initials:



CONNOR LAND TITLE BOX

does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in

**FRANKLIN** County, Ohio:

**SEE EXHIBIT "A" ATTACHED HERETO**

Parcel ID Number:
which has the address of    **6504 CRAB APPLE DRIVE**    [Street]
**CANAL WINCHESTER**    [City], Ohio **43110**    [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

VMP®-4N(OH) (0405).03          Page 2 of 8          Initials:

## EXHIBIT "A"

SITUATED IN THE STATE OF OHIO, COUNTY OF FRANKLIN, CITY OF COLUMBUS:

BEING UNIT 10-6504 BUILDING 10, OF WHITE OAK PARK CONDOMINIUM, TOGETHER WITH ITS UNDIVIDED INTEREST IN COMMON AREAS AND FACILITIES, AS THE SAME IS DESIGNATED, DELINEATED AND DESCRIBED IN THE DECLARATION AND ON THE DRAWINGS THEREOF, OF RECORD, RESPECTIVELY, AS INSTRUMENT NUMBER 200310290346048; AS AMENDED BY THE FIRST AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200404290097517; AS AMENDED BY THE SECOND AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200406070129897; AS AMENDED IN THE THIRD AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200407190166643; AS AMENDED IN THE FOURTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200410120236721; AS AMENDED BY THE FIFTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200504080065584; AS AMENDED BY THE SIXTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200510250224347; AS AMENDED BY THE SEVENTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200608140159761; AS AMENDED BY THE EIGHTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200703290054305; AS REFERENCED IN CONDOMINIUM PLAT BOOK 122, PAGES 79 THROUGH 101; AS AMENDED IN CONDOMINIUM PLAT BOOK 131, PAGES 2 THROUGH 20; AS AMENDED IN CONDOMINIUM PLAT BOOK 135, PAGES 36 THROUGH 54; AS AMENDED IN CONDOMINIUM PLAT BOOK 139, PAGES 1 THROUGH 8; AS AMENDED IN CONDOMINIUM PLAT BOOK 146, PAGES 70 THROUGH 87; AS AMENDED IN CONDOMINIUM PLAT BOOK 155, PAGES 96 THROUGH 109; AS AMENDED IN CONDOMINIUM PLAT BOOK 173, PAGES 43 THROUGH 53; AS AMENDED IN CONDOMINIUM PLAT BOOK 184, PAGES 98 THROUGH 105, RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO.

PARCEL NUMBER 010-278443

2007041854

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

VMP®-4N(OH) (0405).03                    Page 3 of 9                    Initials:

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

VMP®-4N(OH) (0405).03                    Page 4 of 9                    Initials:

lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

VMP®-4N(OH) (0405).03                Page 5 of 9                Initials: [signature]

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| [X] Condominium Rider | [ ] Growing Equity Rider | [ ] Other [specify] |
| [ ] Planned Unit Development Rider | [ ] Graduated Payment Rider | |

VMP®-4N(OH) (0405).03                    Page 7 of 9                    Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        JESSICA L. ALLEN                -Borrower


_____        _____ (Seal)
                                                                        -Borrower


_____ (Seal)        _____ (Seal)
                        -Borrower                                       -Borrower


_____ (Seal)        _____ (Seal)
                        -Borrower                                       -Borrower


_____ (Seal)        _____ (Seal)
                        -Borrower                                       -Borrower

STATE OF OHIO,  FRANKLIN                                    County ss:

This instrument was acknowledged before me this  25th      day of  Apri l, 2007                        , by
JESSICA L. ALLEN

_____
Notary Public

This instrument was prepared by:
BUILDER'S FINANCIAL CORPORATION



RUTH E. PERRY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES MARCH 5, 2008

My Commission Expires:

Initials:

# CONDOMINIUM RIDER

FHA Case No.

THIS CONDOMINIUM RIDER is made this 25th day of April, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
**BUILDER'S FINANCIAL CORPORATION**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

6504 CRAB APPLE DRIVE, CANAL WINCHESTER, OH 43110
[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

WHITE OAK PARK
[Name of Condominium Project]
("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary,

FHA Multistate Condominium Rider - 10/95
Wolters Kluwer Financial Services
VMP®-586U (0402).01
Page 1 of 3 Initials:

then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions
contained in this Condominium Rider.

_____ (Seal)        _____ (Seal)
JESSICA L. ALLEN          -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

VMP®-586U (0402).01              Page 3 of 3

**201007120087370**
Pgs:2    $32.00    T20100038673
07/12/2010  04:33PM    Electronic Recording
Robert G. Montgomery
Franklin County Recorder    ASMO



EXHIBIT
**D**

| F10-02289 | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,

Mortgage Electronic Registration Systems Inc., as nominee for Builder's Financial Corporation ,
PO Box 2026 Flint MI 48501

("Assignor")

does hereby sell, transfer, and set over, without recourse, unto

The Huntington National Bank, 2361 Morse Road Columbus, OH 43229

("Assignee")

Executed and delivered by:    Jessica L. Allen unmarried
Mortgage Deed dated:    April 25, 2007
to and in favor of:    Mortgage Electronic Registration Systems Inc., as nominee for
    Builder's Financial Corporation
filed for record on (date):    April 27, 2007
as Official Record:    Instrument Number 200704270073066
In the Recorder's Office of:    Franklin
together with the Promissory Note secured thereby and referred to therein and any loan modification agreements, and all sums of money due and to become due thereon.
Property address:    6504 Crab Apple Drive, Canal Winchester, Ohio 43110
Legal description:    See attached Exhibit A
    Mortgage Electronic Registration
    Systems Inc., as nominee for
IN WITNESS WHEREOF    Builder's Financial Corporation    , has caused this Assignment
To be executed, for and on its behalf
this                      9th             day of    July             20  10    .

                                        Mortgage Electronic Registration Systems Inc.,
In the presence of:                     as nominee for Builder's Financial Corporation
_Jean Bell_                             By: _[signature]_
                                            Bret Pemoller
Jean Bell                               Its:   Assistant Secretary

_Tami Stone_

Tami Stone

Before me, a Notary Public, personally appeared, Mortgage Electronic Registration Systems Inc., as nominee for Builder's Financial Corporation  by _Bret Pemoller_ , its _Assistant Secretary_   and acknowledged that he/she did sign the foregoing instrument in the name and upon behalf of said Corporation (as such officer); that the same is his/her free act and deed (as authorized thereunto by its Board of Directors)(individually and in his/her/its representative capacity)

In testimony whereof, I have hereunto subscribed my name and affixed my official seal at
_Columbus_    ,  _Ohio_      , this   9th       day of    July          20   10   .

                                    _[signature]_
                                    Notary Public
PREPARED BY:                                TRICIA G. McCULLOUGH
Reimer, Arnovitz, Chernek & Jeffrey Co.,                Notary Public, State of Ohio
L.P.A.                                        My Commission Expires Jan. 28, 2013
By: Peter L. Mehler, Esq.

P10-3133 / F10-02289

## LEGAL DESCRIPTION

Situated in the City of Columbus, County of Franklin and State of Ohio:

And known as being Unit 10-6504 Building 10, of White Oak Park Condominium, together with its undivided interest in common areas and facilities, as the same is designated, delineated and described in the Declaration and on the Drawings thereof, of Record, respectively, as Instrument Number 200310290346048; as amended by the First Amendment of Record in Instrument Number 200404290097517; as amended by the Second Amendment of Record in Instrument Number 200406070129897; as amended in the Third Amendment of Record in Instrument Number 200407190166643; as amended in the Fourth Amendment of Record in Instrument Number 200410120236721; as amended by the Fifth Amendment of Record in Instrument Number 200504080065584; as amended by the Sixth Amendment of Record in Instrument Number 200510250224347; as amended by the Seventh Amendment of Record in Instrument Number 200608140159761; as amended by the Eighth Amendment of Record in Instrument Number 200703290054305; as referenced in Condominium Plat Book 122, Pages 79 through 101; as amended in Condominium Plat Book 131, Pages 2 through 20; as amended in Condominium Plat Book 135, Pages 36 through 54; as amended in Condominium Plat Book 139, Pages 1 through 8; as amended in Condominium Plat Book 146, Pages 70 through 87; as amended in Condominium Plat Book 155, Pages 96 through 109; as amended in Condominium Plat Book 173, Pages 43 through 53; as amended in Condominium Plat Book 184, Pages 98 through 105, Recorder's Office, Franklin County, Ohio.

Page 1 of 1

E0703 - H69

## PRECIPE

**EXHIBIT E**

DATE 12-18-10
COURT OF COMMON PLEAS OF FRANKLIN COUNTY

STATE OF OHIO
DEPARTMENT OF TAXATION

MARYELLEN O'SHAUGHNESSY
FRANKLIN COUNTY CLERK OF COURT
373 SOUTH HIGH STREET
COLUMBUS,OH 43215

PLAINTIFF

VS.

ALLEN, JESSICA L

TAX TYPE: SCHOOL DISTRICT-PERSONAL

6504 CRAB APPLE DR

CRN: 04200936466391

CANAL WINCHESTER,OH 43110

ACCOUNT NO

DEFENDANT   11 JG 01 02725

THE AFOREMENTIONED ASSESSMENT HAS BECOME FINAL BY OPERATION OF LAW
FOR THE PURPOSES OF HAVING A JUDGMENT LIEN RECORDED THEREON.

TO THE CLERK OF COMMON PLEAS COURT:

ENTER JUDGMENT AND RECORD
CERTIFICATE OF JUDGMENT.  RETAIN
ONE COPY AND RETURN ONE COPY TO THE
OFFICE OF THE ATTORNEY GENERAL

JUDGMENT RECORDED ON:

DATE:                AMOUNT $      230.55

CASE NO.:

DOCKET:

PAGE:

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2011 JAN 19 PM 2: 24
CLERK OF COURTS

I hereby certify the foregoing to
be a true and correct copy of the
action of the Tax Commissioner
taken this date with respect to
the above matter.

*Richard A. Levin*

LT450/9094427

A. Levin
issioner



* A 9 0 9 4 4 2 7 C 2 5 D 2 0 1 0 1 2 1 8 C *

E1258 - L56

## PRECIPE



EXHIBIT

**F**

DATE 08-09-11
COURT OF COMMON PLEAS OF FRANKLIN COUNTY

STATE OF OHIO
DEPARTMENT OF TAXATION

MARYELLEN O'SHAUGHNESSY
FRANKLIN COUNTY CLERK OF COURT
373 SOUTH HIGH STREET
COLUMBUS,OH 43215

           PLAINTIFF

     VS.

ALLEN, JESSICA L

TAX TYPE: SCHOOL DISTRICT-PERSONAL

6504 CRAB APPLE DR

CRN: 04201032190333

CANAL WINCHES,OH 43110

ACCOUNT NO ███████████

       DEFENDANT

## 11JG 08 3305 5

THE AFOREMENTIONED ASSESSMENT HAS BECOME FINAL BY OPERATION OF LAW
FOR THE PURPOSES OF HAVING A JUDGMENT LIEN RECORDED THEREON.

TO THE CLERK OF COMMON PLEAS COURT:

ENTER JUDGMENT AND RECORD
CERTIFICATE OF JUDGMENT.  RETAIN
ONE COPY AND RETURN ONE COPY TO THE
OFFICE OF THE ATTORNEY GENERAL

JUDGMENT RECORDED ON:

DATE:

AMOUNT $     284.04

CASE NO.:

DOCKET:

PAGE:

                    I hereby certify the foregoing to
                    be a true and correct copy of the
                    action of the Tax Commissioner
                    taken this date with respect to
                    the above matter.

*Marcia J Macon-Bruce*

LT450/9922537

███████████acon-Bruce
███████████ollections Enforcement



* A 9 9 2 2 5 3 7 C 2 5 D 2 0 1 1 0 8 0 9 C *