**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NO.: 11-62470** |
| **JESSICA LEE ALLEN** | : | **CHAPTER 13 (JUDGE PRESTON)** |
| | : | |
| | : | |
| **Debtor.** | : | |

| | | |
|---|---|---|
| **Jessica Lee Allen** | : | |
| **6504 Crab Apple Drive** | : | |
| **Canal Winchester, OH 43110** | : | |
| **Plaintiff** | : | **Adv. Proc. No:** |
| | : | |
| **v.** | : | |
| | : | |
| **White Oak Park Condo Association, Inc.** | : | |
| **c/o Ohio Equities** | : | |
| **8000 Walton Pkwy, Suite 250** | : | |
| **New Albany, OH 43054** | : | |
| **Defendant** | : | |

**COMPLAINT TO AVOID MORTGAGE**

Jessica Lee Allen, by and through undersigned counsel, states the following Complaint to

Avoid Mortgage:

1.    Plaintiff filed a petition for relief pursuant to Chapter 13 of the United States Bankruptcy

Code on December 16, 2011 ("Petition Date").

2.    This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the general order of reference entered in this district.

3.    This matter is a core proceeding under 28 U.S.C. 157(b)(2)(K). Venue is proper under 28

U.S.C. § 1409(a).

4.    Plaintiff is the owner of residential real property ("the Property") located at:

**6504 Crab Apple Drive**
**Canal Winchester, OH 43110**

which Plaintiff disclosed on Schedule A and which had an appraised value of $53,800 on

the Petition Date as evidenced by the appraisal report filed in Case No. 11-62470 on

January 10, 2012 as Doc. No. 15.

5.     The Property is Plaintiff's primary residence.

6.     On the Petition Date, the Property was subject to a statutory lien for real estate taxes due

and owing to the Franklin County Treasurer and a mortgage lien to Huntington National

Bank, recorded and filed for record in the Office of the Franklin County Recorder as

Instrument No. 200704270073057, a full and accurate copy of which is attached hereto as

Exhibit A, and assigned to Huntington National Bank by an assignment of mortgage

recorded and filed for record in the Office of the Franklin County Recorder as Instrument

No. 201007120087370, a full and accurate copy of which is attached hereto as Exhibit B.

The approximate outstanding balance on the Petition Date was $87,712.88 as reflected in

Claim 6.

7.     The Property is subject to a liens securing unpaid condominium association dues held by

White Oak Park Condo Association, Inc., recorded and filed for record in the Office of

the Franklin County Recorder as Instrument Nos. 201001200006952 and

201003240035060, full and accurate copies of which are attached hereto as Exhibit C,

with an aggregate outstanding balance on the Petition Date of approximately $2,973.00 as

reflected in Claim 7.

8.     White Oak Park Condo Association, Inc.'s liens are junior to the superior liens of the

Franklin County Treasurer and Huntington National Bank.

9.     There exists insufficient equity in the Property for White Oak Park Condo Association,

Inc.'s liens to attach and White Oak Park Condo Association, Inc.'s liens are therefore

wholly unsecured.

10.    Pursuant to the provisions of 11 U.S.C. §§ 506(a) and (d), and 11 U.S.C. §§ 1322,

1325(a)(5), and 1327(b) and (c), applicable to this case by the confirmation of Plaintiff's

Chapter 13 Plan, White Oak Park Condo Association, Inc. is not the holder of a secured

claim as that term is defined in 11 U.S.C. § 506(a).

**WHEREFORE**, Plaintiff respectfully demands the following relief:

1.     That White Oak Park Condo Association, Inc.'s liens, which are recorded and filed for

record in the Office of the Franklin County Recorder as Instrument Nos.

201001200006952 and 201003240035060 be found to be void, that the Court order the

liens to be released and forever discharged;

2.     That the liens of White Oak Park Condo Association, Inc. be deemed unsecured debts;

and

3.     Such further relief that the Court finds just and equitable.

Respectfully submitted,

/s/ Sondra O. Bryson_____
Sondra O. Bryson (0083871)
Bryson Legal, LLC
844 South Front Street
Columbus, OH 43206
T:(614)221-5379
F:(614)443-7463
sbryson@brysonlegalohio.com
*Attorney for Debtor*

Return To:



200704270073066
Pgs: 13  $116.00   T20070027696
04/27/2007 9:24AM  BXCONNOR LAND
Robert G. Montgomery
Franklin County Recorder

**EXHIBIT**

**A**

———————————— {Space Above This Line For Recording Data} ————————————

State of Ohio                                                    FHA Case No.

# OPEN-END MORTGAGE

                                              MIN

THIS MORTGAGE ("Security Instrument") is given on **April 25, 2007**
The Mortgagor is
**JESSICA L. ALLEN, UNMARRIED**

whose current mailing address is **1746 S. HAMILTON ROAD
COLUMBUS, OH 43227**
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as
nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS.
**BUILDER'S FINANCIAL CORPORATION**
("Lender") is organized and existing under the laws of  **THE STATE OF OHIO**                  , and
has an address of **2800 CORPORATE EXCHANGE DRIVE, SUITE 400
COLUMBUS, OHIO 43231**                                . Borrower owes Lender the principal sum of
**Eighty-Two Thousand, Three Hundred Forty-Eight and No/100 ---------------**
                                              Dollars (U.S. $      **82,348.00**      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on **May 1, 2037**
           . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

FHA Ohio Open-End Mortgage with MERS- 4/96
Wolters Kluwer Financial Services
VMP ®-4N(OH) (0405).03          Amended 2/01

Page 1 of 8          Initials



does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in

**FRANKLIN** County, Ohio:

SEE EXHIBIT "A" ATTACHED HERETO

Parcel ID Number:
which has the address of    **6504 CRAB APPLE DRIVE**            [Street]
**CANAL WINCHESTER**        [City], Ohio **43110**      [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initials: _____

## EXHIBIT "A"

SITUATED IN THE STATE OF OHIO, COUNTY OF FRANKLIN, CITY OF COLUMBUS:

BEING UNIT 10-6504 BUILDING 10, OF WHITE OAK PARK CONDOMINIUM, TOGETHER WITH ITS UNDIVIDED INTEREST IN COMMON AREAS AND FACILITIES, AS THE SAME IS DESIGNATED, DELINEATED AND DESCRIBED IN THE DECLARATION AND ON THE DRAWINGS THEREOF, OF RECORD, RESPECTIVELY, AS INSTRUMENT NUMBER 200310290346048; AS AMENDED BY THE FIRST AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200404290097517; AS AMENDED BY THE SECOND AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200406070129897; AS AMENDED IN THE THIRD AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200407190166643; AS AMENDED IN THE FOURTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200410120236721; AS AMENDED BY THE FIFTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200504080065584; AS AMENDED BY THE SIXTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200510250224347; AS AMENDED BY THE SEVENTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200608140159761; AS AMENDED BY THE EIGHTH AMENDMENT OF RECORD IN INSTRUMENT NUMBER 200703290054305; AS REFERENCED IN CONDOMINIUM PLAT BOOK 122, PAGES 79 THROUGH 101; AS AMENDED IN CONDOMINIUM PLAT BOOK 131, PAGES 2 THROUGH 20; AS AMENDED IN CONDOMINIUM PLAT BOOK 135, PAGES 36 THROUGH 54; AS AMENDED IN CONDOMINIUM PLAT BOOK 139, PAGES 1 THROUGH 8; AS AMENDED IN CONDOMINIUM PLAT BOOK 146, PAGES 70 THROUGH 87; AS AMENDED IN CONDOMINIUM PLAT BOOK 155, PAGES 96 THROUGH 109; AS AMENDED IN CONDOMINIUM PLAT BOOK 173, PAGES 43 THROUGH 53; AS AMENDED IN CONDOMINIUM PLAT BOOK 184, PAGES 98 THROUGH 105, RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO.

PARCEL NUMBER 010-278443

2007041854

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

VMP®-4N(OH) (0405).03                    Page 3 of 9                    Initials: ___

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

VMP®-4N(OH) (0405).03                               Page 4 of 9                               Initials: _____

lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

VMP®-4N(OH) (0405).03          Page 5 of 9          Initials:

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Initials:

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If** Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

21. **Riders to this Security Instrument. If** one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[X] Condominium Rider               [ ] Growing Equity Rider               [ ] Other [specify]
[ ] Planned Unit Development Rider   [ ] Graduated Payment Rider

▮▮▮▮▮▮▮

VMP®-4N(OH) (0405).03                          Page 7 of 9                          Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
JESSICA L. ALLEN                                      -Borrower

_____          _____ (Seal)
                                                                              -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

STATE OF OHIO, FRANKLIN                                    County ss:

This instrument was acknowledged before me this 25th    day of April, 2007                    , by
JESSICA L. ALLEN

_____
Notary Public

This instrument was prepared by:
**BUILDER'S FINANCIAL CORPORATION**



RUTH E. PERRY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES MARCH 5, 2008        My Commission Expires:

# CONDOMINIUM RIDER

FHA Case No.

THIS CONDOMINIUM RIDER is made this 25th day of April, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
BUILDER'S FINANCIAL CORPORATION

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

6504 CRAB APPLE DRIVE, CANAL WINCHESTER, OH 43110
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

WHITE OAK PARK
[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary,

FHA Multistate Condominium Rider - 10/95
Wolters Kluwer Financial Services
VMP®-586U (0402).01
Page 1 of 3        Initials:

then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions
contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
JESSICA L. ALLEN        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower


VMP®-586U (0402).01              Page 3 of 3


**201007120087370**
Pgs:2     $32.00     T20100038673
07/12/2010    04:33PM    Electronic Recording
Robert G. Montgomery
Franklin County Recorder      ASMO

| F10-02289 | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,

Mortgage Electronic Registration Systems Inc., as nominee for Builder's Financial Corporation ,
PO Box 2026 Flint MI 48501

("Assignor")

does hereby sell, transfer, and set over, without recourse, unto

The Huntington National Bank, 2361 Morse Road Columbus, OH 43229

("Assignee")

| | |
|---|---|
| Executed and delivered by: | Jessica L. Allen unmarried |
| Mortgage Deed dated: | April 25, 2007 |
| to and in favor of: | Mortgage Electronic Registration Systems Inc., as nominee for Builder's Financial Corporation |
| filed for record on (date): | April 27, 2007 |
| as Official Record: | Instrument Number 200704270073066 |
| In the Recorder's Office of: | Franklin |

together with the Promissory Note secured thereby and referred to therein and any loan modification agreements, and all sums of money due and to become due thereon.

| | |
|---|---|
| Property address: | 6504 Crab Apple Drive, Canal Winchester, Ohio 43110 |
| Legal description: | See attached Exhibit A |

Mortgage Electronic Registration Systems Inc., as nominee for

IN WITNESS WHEREOF     Builder's Financial Corporation     , has caused this Assignment
To be executed, for and on its behalf

this          9th      day of   July        20 10 .

Mortgage Electronic Registration Systems Inc.,
as nominee for Builder's Financial Corporation

In the presence of:

_Jean Bell_ (signature)

By: _____

Bret Pemoller

Jean Bell

Its:    Assistant Secretary

_Tami Stone_ (signature)

Tami Stone

Before me, a Notary Public, personally appeared, Mortgage Electronic Registration Systems Inc., as nominee for Builder's Financial Corporation   by Bret Pemoller     , its Assistant Secretary    and acknowledged that he/she did sign the foregoing instrument in the name and upon behalf of said Corporation (as such officer); that the same is his/her free act and deed (as authorized thereunto by its Board of Directors)(individually and in his/her/its representative capacity)

In testimony whereof, I have hereunto subscribed my name and affixed my official seal at

Columbus      , Ohio      , this   9th    day of   July       20 10 .

Notary Public

TRICIA G. McCULLOUGH
Notary Public, State of Ohio
My Commission Expires Jan. 28, 2013

PREPARED BY:
Reimer, Arnovitz, Chernek & Jeffrey Co.,
L.P.A.
By: Peter L. Mehler, Esq.

P10-3133 / F10-02289

### LEGAL DESCRIPTION

Situated in the City of Columbus, County of Franklin and State of Ohio:

And known as being Unit 10-6504 Building 10, of White Oak Park Condominium, together with its undivided interest in common areas and facilities, as the same is designated, delineated and described in the Declaration and on the Drawings thereof, of Record, respectively, as Instrument Number 200310290346048; as amended by the First Amendment of Record in Instrument Number 200404290097517; as amended by the Second Amendment of Record in Instrument Number 200406070129897; as amended in the Third Amendment of Record in Instrument Number 200407190166643; as amended in the Fourth Amendment of Record in Instrument Number 200410120236721; as amended by the Fifth Amendment of Record in Instrument Number 200504080065584; as amended by the Sixth Amendment of Record in Instrument Number 200510250224347; as amended by the Seventh Amendment of Record in Instrument Number 200608140159761; as amended by the Eighth Amendment of Record in Instrument Number 200703290054305; as referenced in Condominium Plat Book 122, Pages 79 through 101; as amended in Condominium Plat Book 131, Pages 2 through 20; as amended in Condominium Plat Book 135, Pages 36 through 54; as amended in Condominium Plat Book 139, Pages 1 through 8; as amended in Condominium Plat Book 146, Pages 70 through 87; as amended in Condominium Plat Book 155, Pages 96 through 109; as amended in Condominium Plat Book 173, Pages 43 through 53; as amended in Condominium Plat Book 184, Pages 98 through 105, Recorder's Office, Franklin County, Ohio.

Page 1 of 1



201001200006952
Pgs: 2    $28.00    T20100002830
01/20/2010 11:21AM McCHARLES WIL
Robert G. Montgomery
Franklin County Recorder

**EXHIBIT**
**C**

### AFFIDAVIT FOR LIEN

**STATE OF OHIO**
**COUNTY OF FRANKLIN, ss:**

**WHITE OAK PARK CONDOMINIUM ASSOCIATION**, an Association created under the provisions of Chapter 5311 of the Revised Code of Ohio and incorporated as an Ohio Corporation not-for-profit under the provisions of Chapter 1702 of the Revised Code of Ohio, with offices **c/o Lifestyle Property Management, 230 West Street, Suite 200, Columbus, Ohio 43215**, by __Holly L. Stenger__, its __President__, authorized in the premises, pursuant to authorization given by its Board of Trustees, Section 5311.18 of the Revised Code of Ohio, and the below-described Declaration says:

(1)    **Jessica L. Allen** is the record owner of the following described premises situated in the State of Ohio, County of Franklin, City of Columbus:

Being Unit 10-6504 Building 10, of White Oak Park Condominium, together with its undivided interest in common areas and facilities, as the same is designated, delineated and described in the Declaration and on the Drawings thereof, of record, respectively, in Instrument Number 200310290346048; as amended by the First Amendment of record in Instrument Number 200404290097517; as amended by the Second Amendment of record in Instrument Number 200406070129897; as amended in the Third Amendment of Record in Instrument Number 200407190166643; as amended in the Fourth Amendment of Record in Instrument Number 200410120236721; as amended in the Fifth Amendment of Record in Instrument Number 200504080065584; as amended in the Sixth Amendment of Record in Instrument Number 200510250224347; as amended in the Seventh Amendment of Record in Instrument Number 200608140159761; as amended in the Eighth Amendment of Record in Instrument Number 200703290054305; as referenced in Condominium Plat Book 122, Pages 79 through 101; as amended in Condominium Plat Book 131, Pages 2 through 20; as amended in Condominium Plat Book 135, Pages 36 through 54, as amended in Condominium Plat Book 139, pages 1 through 8, as amended in Condominium Plat Book 146, pages 70 through 87, as amended in Condominium Plat Book 155, pages 96 through 109, as amended in Condominium Plat Book 174, pages 43 through 53, as amended in Condominium Plat Book 184, pages 98 through 105, Recorder's Office, Franklin County, Ohio.

(2)    These premises have become subject to charges of the Association for common expenses levied pursuant to Chapter 5311 of the Revised Code of Ohio and the aforesaid Declaration and By-laws for the 2009 fiscal year of the Association.

(3)      These due and unpaid charges of the 2009 fiscal year of the Association are in the amount of $461.37 through December, 2009, which amount, together with interest thereon at the rate of 10% per annum from and after January 1, 2009, are a lawful, binding claim and a continuing lien against these premises.

NOW, THEREFORE, WHITE OAK PARK CONDOMINIUM ASSOCIATION claims a lien against these premises in the amount of $461.37 together with interest from and after January 1, 2009, until paid, at the rate of 10% per annum, over and above legal setoffs, which amounts it claims are justly and truly owing to it.

**WHITE OAK PARK CONDOMINIUM ASSOCIATION**

Signed: _____

Printed: _Holly L. Stenger_____

Sworn to before me and subscribed in my presence this ___13___ day of _January  2010_, 2009.

_____
Notary Public

This instrument prepared by:
CHARLES T. WILLIAMS LAW OFFICES
Two Miranova Place, Suite 380
Columbus, Ohio 43215-7047
(614) 228-0207

NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
February 21, 2011

20100324 0035060
Pgs: 2   $28.00        T20100019007
03/24/2010  2:30PM   MLCHARLES T W
Robert G. Montgomery
Franklin County Recorder

**AFFIDAVIT FOR LIEN**

**STATE OF OHIO**
**COUNTY O. FRANKLIN, ss:**

**WHITE OAK PARK CONDOMINIUM ASSOCIATION**, an Association created under the provisions of Chapter 5311 of the Revised Code of Ohio and incorporated as an Ohio Corporation not-for-profit under the provisions of Chapter 1702 of the Revised Code of Ohio, with offices c/o **Lifestyle Property Management, 230 West Street, Suite 200, Columbus, Ohio 43215**, by Holly L. Stenger, its President, authorized in the premises, pursuant to authorization given by its Board of Trustees, Section 5311.18 of the Revised Code of Ohio, and the below-described Declaration says:

(1)      **Jessica L. Allen** is the record owner of the following described premises situated in the State of Ohio, County of Franklin, City of Columbus:

Being Unit 10-6504 Building 10, of White Oak Park Condominium, together with its undivided interest in common areas and facilities, as the same is designated, delineated and described in the Declaration and on the Drawings thereof, of record, respectively, in Instrument Number 200310290346048; as amended by the First Amendment of record in Instrument Number 200404290097517; as amended by the Second Amendment of record in Instrument Number 200406070129897; as amended in the Third Amendment of Record in Instrument Number 200407190166643; as amended in the Fourth Amendment of Record in Instrument Number 200410120236721; as amended in the Fifth Amendment of Record in Instrument Number 200504080065584; as amended in the Sixth Amendment of Record in Instrument Number 200510250224347; as amended in the Seventh Amendment of Record in Instrument Number 200608140159761; as amended in the Eighth Amendment of Record in Instrument Number 200703290054305; as referenced in Condominium Plat Book 122, Pages 79 through 101; as amended in Condominium Plat Book 131, Pages 2 through 20; as amended in Condominium Plat Book 135, Pages 36 through 54, as amended in Condominium Plat Book 139, pages 1 through 8, as amended in Condominium Plat Book 146, pages 70 through 87, as amended in Condominium Plat Book 155, pages 96 through 109, as amended in Condominium Plat Book 174, pages 43 through 53, as amended in Condominium Plat Book 184, pages 98 through 105, Recorder's Office, Franklin County, Ohio.

(2)      These premises have become subject to charges of the Association for common expenses levied pursuant to Chapter 5311 of the Revised Code of Ohio and the aforesaid Declaration and By-laws for the 2010 fiscal year of the Association.

(3)    These due and unpaid charges of the 2010 fiscal year of the Association are in the amount of $1,337.37 through December, 2010, which amount, together with interest thereon at the rate of 8% per annum from and after January 1, 2010, are a lawful, binding claim and a continuing lien against these premises.

NOW, THEREFORE, WHITE OAK PARK CONDOMINIUM ASSOCIATION claims a lien against these premises in the amount of $1,337.37 together with interest from and after January 1, 2010, until paid, at the rate of 8% per annum, over and above legal setoffs, which amounts it claims are justly and truly owing to it.

**WHITE OAK PARK CONDOMINIUM ASSOCIATION**

Signed: _____

Printed: _Holly L. Stenger_ _____

Sworn to before me and subscribed in my presence this _22nd_ day of _March_ , 2010.

_____
Notary Public

CHRIS TILTON
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
February 21, 2011

This instrument prepared by:
CHARLES T. WILLIAMS LAW OFFICES
Two Miranova Place, Suite 380
Columbus, Ohio 43215-7047
(614) 228-0207